Good morning everyone, Judge Smith and I would like to welcome and thank Judge Waters for sitting with us on the District of Montana. Thank you Judge Waters. Thank you. These cases will be called in the order listed on the diamond. The first case will be on the court bargain in the United States versus Pegasus. I'm sure I'm butchering the name. All right guys, please approach and proceed. Good morning. Good morning. Good morning. I'm here to support Charles Edow, Jr. and I'm here on behalf of Collin James Burgis. Guys, this morning we'd like to address argument two of our briefing. It's a subject on which this court has been active in recent months and that is whether the necessary element was omitted from jury instructions. That is, the prosecution here was based largely on fraud through material omissions. However, all fraud prosecution based on material omissions requires the duty to disclose and that duty must be based on a relationship of fiduciary duty. Mr. Manifield, the District Attorney Counselor, I may have been talking to you a little bit about that. First of all, what's my standard of review of this instruction? The standard for review says an element of the offense was omitted and was undecided by the jury. Do you ever challenge these? Not you, but did the underlying counsel ever challenge these instructions? No. Did they ever ask for a certain instruction? I don't know. The standard of review is harmful therapy under reasonable judgment. Well, I understand. I'm just trying to understand. It seemed to me in reading this transcript that counsel did not challenge the jury instructions. First of all, they did never provide any instruction to be given that wasn't given. So it seems to me at that point I'm on a plain error review. Am I not? That's correct. If I'm on a plain error review, that's the reason that gives me a little bit. Didn't the court follow the Ninth Circuit's instructions? Well, at the time, the Ninth Circuit's instructions were out of date, but yes. They followed the Ninth Circuit instructions. So I'm trying to figure out why it's a plain error. Well, I'd like to ask that the same question was addressed by this court in Shields in December. It's the key opinion that establishes judiciary duty as a necessary element, but it recognizes that the rule is actually quite old. And, in fact, a Shields opinion cites language from 1984. Maybe they could have gone back further, but in 1984 this court in Dowling said, and I'm quoting, a nondisclosure can only serve as a basis for a fraudulent scheme when there exists an independent duty that has been breached by the person so charged, such as a fiduciary or statutory duty. Go ahead. I'm sorry. Now, the plain error is error that's so clear that a judge should be able to recognize it without an objection. But how could the court in this case be held to that standard when it followed the instructions, the monitoring instructions? It's not that there is such an independent error. It's so obvious that a judge should recognize it without an objection. The court has to be guided primarily by case law and by law for this circuit and not necessarily by the jury instructions. The published jury instructions are slow to catch on. And this court in Milo Vanovich had already decided that an autism services fraud prosecution fiduciary duty is a necessary element. That was based in spelling a decision, which is now quite old from the United States Supreme Court. It goes back to the Ilrod scandal. So let me take you a different approach. Under normal contract law for fraud, we need an untrue assertion of fact or an equivalent, and we need the assertion made on knowledge of the falsity and intent to deceive, the loss, and the reliance. However, under normal contract law, the assertion can be a concealment, which is intended to prevent the other party from discovering the fact. It can be a nondisclosure, and there are two types of nondisclosure. One, disclosure is required when one has disclosed some information, but further information is needed to give the party the accurate picture. And the second is disclosure when there's a relationship of trust, of confidence between the parties. Well, you're alleging that we've got to have a relationship of trust, but it seems to me the nondisclosure can be based on half-truths. In other words, one disclosed some information, but further information is needed to give the other party the accurate picture. It seems to me that that's the theory that went forward to the jury, and in fact, U.S. v. Lloyd, 2015, 9th Circuit case says, a duty disclosure arises from telling a half-truth, independent of any responsibilities arising from a truth relationship. So if that's the law on the 9th Circuit again, I'm having a tough time on plain air. Well, that's a big bite to chew on. I said it, I understand. I want you to respond, because frankly it seems to me that Shields doesn't change that. I don't think it was designed to change any of that, but it does establish, and which was already long established, that these are questions for a jury to decide. Well, I understand, and when one is alleging then concealment, on having given some of the information but not all of it, rather the disclosure comes from telling a half-truth, it seems to me the jury got the appropriate instructions by following the 9th Circuit instructions. Well, I would imply for it to allege. It is one thing to allege. It is another thing to prove. Well, I understand, but we're really talking about instructions now. Yes. Did the instructions follow an allegation of half-truth? Which it seems they did. And it also seems that you didn't give any other instruction to give. You didn't object to any instruction. So given the 9th Circuit instructions and a theory of half-truth was absolutely a good instruction. I think the introduction to the 9th Circuit jury instructions states that it's the case law from this court what this court says. I see that. That doesn't answer my question. I'm sorry. I didn't think it does. What I said is if the district court gave the instructions dealing with half-truth, why is there error? Did it say anything about the necessity for fiduciary duty? It doesn't need any fiduciary duty. It can either be a fiduciary duty relationship or it could be a half-truth relationship. It depends entirely on whether the jury has any proof. It depends on the proof of the allegation. Did you say there is no proof of telling half-truth in this record? Not that this court can decide from this perspective. That is something for the jury to decide, not at this perspective. We're trying to decide. We're just trying to say is there enough evidence in this record to convict this person on telling half-truths? But there's not to be. Ultimately, I wonder why there isn't. Well, it's because you have to turn the clock back to 2008. This avalanche or stampede was going on into the housing market. Everybody thought that they could get rich overnight, so this was a half-truth. Mr. Gergeis fully believed that he could pay back these people with the hands of interest, and so did they. The problems arose after the investment was made, so it was not a half-truth at the time. He was operating a successful business that everyone expected would continue on its current track. So, frankly, if you look at the evidence, he drove expensive cars. He bragged of success as an investor. He relied in talking to these investors of his reputation to testify in their homes with him. And then he told them a half-truth. Sometimes that's a lifestyle expense. It's a necessary part of the profession. Okay. I'll add to this. He was an investor. He adequately described it. Yes. How? You know, there was a real estate investor and he was operating casinos in New Jersey at one time, and he had a lot of expenses that were projecting his lifestyle. And I understand the bankruptcy court, when we're in belly-ups, and, you know, you get to continually look at your lifestyle because it is a necessary part of the business. Now, Mr. Gergeis has some of the same concerns in running his business. He has to work. He has to go out and buy the Toyota Excite tickets for the basketball game. That's what you do when you are entertaining the investors. They want to see you get into a fancy car, and then that's how you do business. It is part of the life. The lifestyle becomes part of the business. So this is not necessarily an indicator of fraud. All right. I'll forgive you for your time. Thank you. Thank you. Good morning, Your Honors. May it please the Court. Todd Pickles of Memphis, Texas. To go to the heart of the matter that's been addressed this morning, there was no plea in the error of the court giving what was then the support of some model obstructions with respect to wire and mail fraud. Judge Smith, at the time, and I think the Court has noted, even in Shields, the Court recognized that there was no controlling authority requiring any sort of obstruction. And that's even in the omissions context, where it would have been based on some kind of a trust relationship, and that's a particular 844. That's the 823. I want to make clear, this case was never based on any sort of omissions theory. I do believe, Judge Smith, there is some allegation of half-truth, but we look at both the indictment and the argument that was presented to the jury. This was very much an affirmative misrepresentation case. Lies were told to the victims as to what Mr. Bergeis would do with the money and the security upon which that money would be secured. In this case, those were false. That's the way the argument was presented to the jury. That's the way the evidence was presented to the jury. And under the plain error review, including under Shields, there is no basis by which the support could find that somehow Mr. Bergeis' substantial rights were affected, given the evidence presented. As to this argument that somehow Mr. Bergeis believed he could pay back the money and that he was somehow permitted to use the money for a robbery, he saw that it swung, and at some point the investors would be made whole, there's no evidence of that in the record either. What the evidence instead shows is Mr. Bergeis took the money from the investors. He didn't invest hardly any of it. Instead, he spent it on himself or to pay prior investors back. It's a classic Ponzi scheme. The idea that Mr. Bergeis could simply use the money to fund an influent lifestyle and that would somehow endure to the benefit of the victims, I think, Your Honor, is refuged to what the victims believed the whole time. They didn't believe it was their money that was being used to fund Mr. Bergeis' influent lifestyle. They believed Mr. Bergeis was an affirmative investor and they were going to take advantage of his abilities. He misled them, and in light of the evidence, Your Honor, so I think the court should affirm Mr. Bergeis' convictions. I believe I was just sentenced. Yes, Your Honor. I think I wanted to have a chance to respond to Counsel's argument about that and about the conviction itself, but when we turn to the sentence itself, didn't the district court really abuse its discretion when it applied the two-level upward enhancement for instruction? No, Your Honor, it did not. Doesn't this, I mean, I guess it seems to me that the district court  Yes, Your Honor. the deposition testimony related to, I guess, to a count of conviction? Is that what it was really relating to? It related to one of the victims of the Ponzi scheme. The particular witness was not one of the individuals. I'm sorry, Your Honor, my error may have been. Okay, so when I read what the district court really needs to do for this two-level enhancement, it seems to me that the testimony relates to the conviction, which I guess I can find this testimony relates to count of conviction, must occur with respect to the investigation, prosecuting, or sentencing. I didn't find anything in the record that said the district court made such a finding. Your Honor, I think what I would look at, excerpts of record 106 to 107, I think that's the closest for the court to address this issue. Well, my worry is that I looked at that, and I don't think the district court made an explicit finding of such. And then it had to make another finding as to materiality, and I don't think it made any finding as to materiality. Well, Your Honor, I think actually, particularly with the issue of materiality, if you look at excerpts of record 106 and 107, the argument about materiality is the best that we have by what the district court did is the 106 and 107. Yes, Your Honor, that's where the court addressed the arguments in particular. Because it seems to me that the court has to make three different determinations. It has to first of all say it relates to the count of conviction. Then it has to suggest that it occurs with respect to the investigation, prosecution, or sentencing. And lastly, that it must be material. My worry is that we don't have that here. I do think the court may have had it, but the court didn't really focus on it. So I'm wondering if we really heard it. I do think you did. I mean, I can get this offense level increased for committing sparring or attempting sparring perjury. I understand that. Then I say to myself, did perjury really occur? And then when I get through that analysis, I'm back to this. And even if surgery, the district court's got to make an explicit finding as to the three aspects we talked about. And I couldn't find it. Yes, Your Honor, as to the materiality, do you think if the court looks at 106, 107, you'll find the court addressed the argument that somehow the lie didn't matter? And the court said, no, it did. And how Mr. Rodriguez actually spent the money, as attempted to conceal, was part of the transaction. And so what's that standard over here? Your Honor, this would be a piece of description. The issue was preserved, although he's touched this particular argument. Well, we do need to find explicit findings when we're kind of trying to make this an enhancement, do we not? Your Honor, the court's found explicit findings are required when there's a perjury within the proceedings itself. And I think the court's taught that the reason is we want to chill if that is Fifth Amendment law. I understand that. But the thing that worries me about this is I'm generally one who has an abuse of discretion. I don't get too much worrying about it. But then when I looked at what the case law says, it says that the district court must make an explicit finding. And now we're talking about this, if you will, deposition testimony not even of the defendant but of another. And we're saying then that using that to increase this, when we really don't know whether the testimony related to the conviction or the recurve, I think, related to the conviction, I can get to recurring with respect to investigation, prosecuting, or sentencing. I don't know whether the district court really mentioned that. If 106, 107 is your best effort. Yes, Your Honor. First, it was the defendant's testimony. It was the defendant who perjured himself in the deposition. I want to make that clear. Absolutely. Okay. Counsel, do you agree that under an abuse of discretion standard, that the district court abuses discretion as a matter of law if no explicit finding is made? Not on this particular point, Your Honor. There has been no case law, at least in this circuit, that has made those requirements, the explicit finding requirements have been in the context of perjury in the course of the proceedings before that court. And the reason being, no one should a defendant taking a stand and exercising their testimony surely shouldn't have those same concerns in this situation. I saw that as perjury, but not necessarily obstructive conduct under 3C1.1. Yes, Frank, I guess the point I'm making is that this particular permission has not been addressed by this court at this point. I think the closest the court can turn is the Gilchrist decision. In that decision, there were findings that Judge Smith has indicated, at least it is indicated by the published decision by this court. I would suggest that we have a factually valid situation here where we have findings by the district court about perjury and it's held up as a shield. The court made findings that was material to it. In other words, you wouldn't be here for what you implied about and the lies were meant to conceal what occurred. And I do think the court, I think in part of those findings, is also a recognition that there is a connection between the full deposition and the ultimate investigation. But, Your Honor, I don't have anything to do with what's in 106. And really, if in fact we can't quite get there as to this, then we really can't determine whether the district court abuses its discretion by varying the guidelines because we don't know what the guidelines are, right? The guidelines would be the preliminary steps in terms of the ultimate sense and determination of the court. Yes, Your Honor. And I know you're already disappointed. As the court techniques are, the Gilchrist decision, which I think is closest to, I think, if you look at the facts of that case, it is squarely related, at least, to this issue that the court has addressed. Thank you, counsel. Thank you, Your Honor. Counsel, you're exceeding your time. We'll give you a minute for a rebuttal. First of all, regarding the departure or the point score for the guidelines, there is a reasonable opinion from this court, which I will cite through a 28-J letter. The time to do a 28-J letter is before argument. The case is Pneus v. Bowe, L-I-E-W 14-10-367. And the issue there was whether a general denial in a civil case was enough to establish an obstruction of justice, and the court held that it was not. Counsel, the point that Judge Smith raised regarding the requirement of explicit findings, did you make that argument? I agree. I don't think I did. Thank you. Ms. Hawkins. I mean, I was going to ask that same question. Since the fact you didn't make the argument, is that really lost for me? I agree. The fact you did not make the argument, is that really lost as to me? No. It's something the court can certainly take into account. It goes with it, our argument. Well, it doesn't come into your argument. That's a completely different argument than you made. It would be, obviously, our argument would be different if he had made the findings and he didn't. So I'm saying you didn't make an argument. Okay. Thank you. Thank you, Counsel. Thank you both, Counsel, for your arguments in this case. The case does not get insubstituted for a decision by the court.
judges: Rawlinson, N.R. Smith, Watters